**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edith Georgine Moya,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-20-02346-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Edith Georgine Moya's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 20, Pl. Br.) and Defendant Social Security Administration Commissioner's Response Brief (Doc. 21, Def. Br.). The Court has reviewed the briefs and Administrative Record (Doc. 17, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 50–61) as upheld by the Appeals Council (R. at 20–22).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 3, 2018, for a period of disability beginning on April 27, 2018. (R. at 50.) Her claim was denied initially on March 4, 2019, and upon reconsideration on June 12, 2019. (R. at 50.) On May 19, 2020, Plaintiff appeared telephonically before the ALJ for a hearing regarding her claim. (R. at 50.) On July 17, 2020, the ALJ denied Plaintiff's claim (R. at 50–61), and on

October 14, 2020, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 20.)

The Court has reviewed the record and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of degenerative disc disease, spine disorder, obesity, status post humerus fracture, depressive disorder, anxiety disorder, and fibromyalgia. (R. at 52.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 61.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 53.) The ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform light work with some physical and environmental limitations. (R. at 55.) Accordingly, the ALJ found that Plaintiff can perform unskilled, light work in the national economy, including production assembler, car wash attendant, and housekeeper, such that Plaintiff is not under a disability as defined in the Social Security Act. (R. at 61.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation,

one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises a single argument for the Court's consideration, namely, that the ALJ's reasons for rejecting certain medical opinion evidence were not supported by substantial evidence in the record. (Pl. Br. at 1–2.)

Plaintiff first contends that the ALJ's reasons were insufficient for discounting the opinion of Dr. Vansana Khurma, Plaintiff's rheumatologist since 2016. On March 28, 2019, on a standardized form titled "Arthritic/Orthopaedic Disorders Medical Source

Statement," Dr. Khurma observed that, on account of "psoriatic arthritis, shoulder tendinitis, trochanteric bursitis, and a left shoulder fracture," Plaintiff reported a pain factor of 6 out of 10. (R. at 1452.) Dr. Khurma opined that Plaintiff could walk one to two city blocks at a time, sit for 30 minutes at a time, stand for 15 minutes at a time, and sit or stand/walk each for less than two hours in an eight-hour day. (R. at 1453.) Plaintiff thus requires a job in which she can shift at will from sitting to standing to walking. (R. at 1453.) According to Dr. Khurma, Plaintiff can lift less than ten pounds occasionally. (R. at 1454.) Dr. Khurma estimated that Plaintiff would be absent from work more than three times a month. (R. at 1455.)

The ALJ found Dr. Khurma's estimations of Plaintiff's limitations too severe and inconsistent with the objective medical evidence, including physical examinations of Plaintiff. (R. at 58–59.) For example, with regard to shoulder, elbow, and hand mobility, an examination of Plaintiff in January 2019 after a non-displaced upper-arm fracture revealed full range of motion and "normal neurovascular exam" of the wrist and hand and 30–90 degree range of motion in the elbow. (R. at 1392–94.) Thereafter, Plaintiff's strength and mobility increased with physical therapy and she was able to manage activities of daily living and drive her car. (R. at 1478.) The ALJ also noted a January 2020 x-ray of Plaintiff's hand showed "no significant osseous abnormalities," and a vascular specialist recommended no specific treatment. (R. at 1666, 1669.)

The Ninth Circuit no longer accords special deference to a claimant's treating physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. Apr. 22, 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the

persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In evaluating Plaintiff's physical impairments, the ALJ considered Dr. Khurma's assessment of Plaintiff as compared to the objective medical examinations of Plaintiff and the opinions of the state agency medical consultants, as required. (R. at 56–59.) The ALJ properly noted inconsistencies between Dr. Khurma's evaluation and the rest of the medical record; for example, Dr. Khurma opined that Plaintiff was limited to occasionally lifting less than ten pounds, but medical examinations repeatedly revealed normal strength, recovery from the shoulder injury, and, at worst, mild degenerative changes of the first metacarpal joint. (R. at 792, 933, 940, 944, 1674, 1681.) Likewise, Dr. Khurma opined that Plaintiff could stand/walk for less than two hours in an eight-hour day, but examinations revealed Plaintiff had a normal and steady gait, imaging of her hips and pelvis was normal, and imaging of her ankles showed no acute fractures or soft tissue swelling. (R. at 940, 1682, 1686, 1691–92.) The ALJ identified sufficient reasons supported by substantial evidence—more than a mere scintilla—to discount Dr. Khurma's assessment of Plaintiff's physical capacity and to give weight to the state agency medical consultants' opinions as supported by the evidence. *See Woods*, 32 F.4th at 792–93.

Likewise, the ALJ gave sufficient reasons supported by substantial evidence to discount the assessments of Plaintiff's mental capacity by Dr. Reema Lewis and Licensed Mental Health Counselor Tinamarie Fish. On April 8, 2019, Dr. Lewis—Plaintiff's psychiatrist—opined that Plaintiff exhibited depressive symptoms and had "marked impairment" in the activities of daily living, "intermittent difficulties maintaining social functioning," "difficulties with concentration," and "difficulty with focus and motivation."[1] (R. at 1457–58.) The ALJ found Plaintiff has moderate limitations in understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace. (R. at 53–54.)[2] To the extent these limitations are not inconsistent with Dr. Lewis's evaluation, the ALJ's discounting of Dr. Lewis's opinion was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

Where the ALJ diverged was with regard to Dr. Lewis's assessment of Plaintiff's ability in "adapting and managing oneself." (R. at 54.) The ALJ found Plaintiff had no limitation in this general area, and Dr. Lewis opined Plaintiff had "marked impairment" in the activities of daily living. (R. at 1458.) The ALJ noted that some of the restrictions Dr. Lewis noted had been remedied. For example, while Plaintiff could not drive for some time due to her shoulder injury, she began driving thereafter. (R. at 59, 1478.) Similarly, the ALJ noted that, by March 2019, Plaintiff was regaining mobility "in terms of being able to manage [activities of daily living]," and although the record contains reports of depressive episodes, they improved over time. (R. at 57, 1575, 1702.) The ALJ also relied in part on Plaintiff's reports of social interaction, such as a vacation in Idaho, which Plaintiff stated was "fun," and other planned trips. (R. at 56, 59, 826, 1514.) The ALJ provided sufficient reasons supported by substantial evidence in the record to discount Dr. Lewis's assessment

---

[1] Dr. Lewis generally did not employ the terminology for mental impairments of "severe," "marked," "moderate," and "mild" found in the regulations implementing the Act. *See* 20 C.F.R. § 404.1520a.

[2] Ultimately, the ALJ incorporated Plaintiff's mental limitations in his formulation of the RFC by restricting Plaintiff to unskilled work and stating that Plaintiff "can interact with supervisors, co-workers, and the public occasionally." (R. at 55, 61.)

of Plaintiff's ability to engage in the activities of daily living and to credit the opinions of the state agency medical consultants.

By the same token, the ALJ provided sufficient reasons supported by substantial evidence to discount LMHC Fish's assessment. Ms. Fish opined Plaintiff lacked motivation, exhibited "isolating behaviors," had marked restrictions in the activities of daily living, and had difficulty with socialization. (R. at 1445–48.) The ALJ noted that many of Ms. Fish's opinions were based on Plaintiff's subjective complaints of physical conditions and not on applicable medical evidence. (R. at 59.) In any event, the ALJ cited the same reasons supported by the record that he used to discount Dr. Lewis's assessment (R. at 59), and the Court finds these reasons sufficient and adequately supported.

Because the ALJ met the 20 C.F.R. § 404.1520c (and *Woods*) standard in evaluating the medical evidence in this case and concluding Plaintiff is not disabled under the Act, the Court will affirm the ALJ's decision. *See Barnhart v. Walton*, 535 U.S. 212, 225 (2002); *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020).

**IT IS THEREFORE ORDERED** affirming the July 17, 2020 decision of the ALJ (R. at 50–61), as affirmed by the Appeals Council on October 14, 2020 (R. at 20).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 28th day of February, 2023.

Honorable John J. Tuchi
United States District Judge